

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                    *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

January 7, 2005

Martin Richey, Esq.
Office of the Federal Public Defender
408 Atlantic Avenue
3rd Floor
Boston, MA 02210

    Re:   United States v. Essokoussam Agba
           Criminal No. 04-10136-RCL

Dear Mr. Richey:

    This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Essokoussam Agba ("Agba"), in the above-captioned case. The Agreement is as follows:

    1.    <u>Change of Plea</u>

    At the earliest practicable date, Agba shall plead guilty to the Superseding Indictment in <u>United States v. Essokoussam Agba</u>, Criminal No. 04-10136-RCL, which charges him with one count of conspiracy to import over one kilogram of heroin. Agba expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crime charged in the Superseding Indictment and is in fact guilty of those offenses.

    2.    <u>Penalties</u>

    Agba faces the following minimum mandatory and maximum penalties: a maximum term of imprisonment of life, with a minimum mandatory term of ten years' imprisonment, a maximum fine of $4,000,000, a period of supervised release of at least five years to a maximum period of life, and a special assessment of $100.

    Agba may also be deportable and/or excludable by the U.S. Immigration and Customs Enforcement as a consequence of his

conviction of the offenses to which he is pleading guilty.

   3.   <u>Sentencing Guidelines</u>

   The parties will take the following positions at sentencing under the United States Sentencing Guidelines:

   (a)   The parties agree to take the position that if Agba is not entitled to a minor role adjustment pursuant to U.S.S.G § 3B1.2(b) (to which the government contends he is not), he has a base offense level of 32, pursuant to § 2D1.1 of the Sentencing Guidelines, based upon his importation of over one kilogram of heroin.

   (b)   Agba takes the position that he is entitled to a minimal role adjustment pursuant to U.S.S.G §3B1.2(a), and is therefore entitled to a four level reduction in his base offense level. The government takes the position that Agba is not entitled to any role adjustment under §3b1.2.

   (c)   The parties recognize that if the Court finds that Agba is entitled to a role adjustment pursuant to U.S.S.G §3B1.2, then Agba's base offense level is 30 pursuant to §2D1.1(a)(3).

   (d)   Agba will take the position that the Court should apply §5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f) and impose a sentence without regard to the statutory minimum-mandatory sentences that are otherwise applicable in this case. Agba also will take the position that, pursuant to §2D1.1(b)(6) of the Sentencing Guidelines, his offense level should be reduced by two levels.

   Based upon the information in the possession of the U.S. Attorney at this time, the U.S. Attorney finds that Agba has personally satisfied §5C1.2(5), and will recommend applying § 5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f) if the U.S. Probation Office finds that Agba meets the requirements of §5C1.2(1)-(4).

   Agba recognizes and acknowledges that, if the Court declines to apply §5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f), Agba will not

2

       receive an additional two level reduction pursuant to §2D1.1(b)(6) of the Sentencing Guidelines and he will receive a sentence at or above the statutory minimum-mandatory term of years.

(d)   Based on Agba's prompt acceptance of personal responsibility for the offense of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Agba's Adjusted Offense Level under U.S.S.G. § 3E1.1.

       The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Agba:

    (a)   Fails to admit a complete factual basis for the plea;

    (b)   Fails to truthfully admit his conduct in the offenses of conviction;

    (c)   Falsely denies, or frivolously contests, relevant conduct for which Agba is accountable under U.S.S.G. § 1B1.3;

    (d)   Fails to provide truthful information about his financial status;

    (e)   Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Agba is accountable under U.S.S.G. § 1B1.3;

    (f)   Engages in acts which form a basis for finding that Agba has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

    (g)   Intentionally fails to appear in Court or violates any condition of release;

    (h)   Commits a crime;

    (i)   Transfers any asset protected under any

provision of this Agreement; and/or

(j)  Attempts to withdraw his guilty plea.

Agba expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Agba expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Agba obstructs justice after date of this Agreement.

4.  <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence before the District Court:

(a)  incarceration within the range established by the Sentencing Guidelines, but not below any applicable minimum mandatory sentence;

(b)  a fine within the Guideline range unless the court finds pursuant U.S.S.G. § 5E1.2(e) that Agba is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

(c)  a mandatory special assessment of $100; and

(d)  a period of supervised release of 5 years.

The U.S. Attorney and Agba are unaware at this time of any basis for a departure from the sentencing range established by the United States Sentencing Guidelines.  In the event that either the U.S. Attorney or Agba subsequently learns that there is a basis for moving for departure, that person will give written notice to the other party of the basis for such departure not less than fourteen days before sentencing.  Any basis for departure for which written notice is not received at least fourteen days before sentencing is hereby expressly waived and cannot be argued at the time of sentencing.

In the event of an appeal from, or collateral challenge to,

4

Agba's sentence, the U.S. Attorney reserves his right to argue the correctness of Agba's sentence and the manner in which the District Court determines it.

5.  Payment of Mandatory Special Assessment

Agba agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Agba establishes to the satisfaction of the Court that Agba is financially unable to do so.

6.  Waiver of Rights Under Blakely v. Washington

The defendant is familiar with the Supreme Court's decisions in Blakely v. Washington, 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000). Notwithstanding those decisions, the defendant agrees to waive all constitutional challenges to the validity of the Sentencing Guidelines, and agrees to have his sentence determined pursuant to the Sentencing Guidelines; waives any claim he might have that the facts that determine his guideline sentencing range (including facts that support any specific offense characteristic, specific offender enhancement, other upward adjustment, and the defendant's criminal history category) should be alleged in an indictment and found by a jury beyond a reasonable doubt; and agrees that facts that determine his guideline sentencing range will be found by the court at sentencing by a preponderance of the evidence. The defendant further agrees that the sentencing court may consider any reliable evidence, including hearsay.

7.  Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Agba faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Agba's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Agba may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Agba withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

8. <u>Information For Presentence Report</u>

Agba agrees to provide all information requested by the U.S. Probation Office concerning his assets.

9. <u>Civil Liability</u>

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Agba may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement.

10. <u>Rejection of Plea By Court</u>

Should Agba's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Agba, this Agreement shall be null and void at the option of the U.S. Attorney.

11. <u>Breach of Agreement</u>

If the U.S. Attorney determines that Agba has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Agba, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Agba recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Agba understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Agba before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, or pursuant to the proffer agreement dated March 10, 2004, without any limitation. In this regard, Agba hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

12. <u>Who Is Bound By Agreement</u>

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

13. <u>Complete Agreement</u>

This letter contains the complete agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter and in the proffer letter dated March 10, 2004. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral with the sole exception of those contained in the proffer letter dated March 10, 2004. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Agba, please have Agba sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Susan M. Poswistilo.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JAMES B. FARMER
Assistant U.S. Attorney
Chief,
Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

SUSAN M. POSWISTILO
Assistant U.S. Attorney

ACKNOWLEDGMENT OF PLEA AGREEMENT

I have had this letter read to me in my native language in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

ESSOKOUSSAM AGBA
Defendant

Date: 1/10/05

I certify that Essokoussam Agba has had this Agreement read to him in his native language and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

MARTIN RICHEY, Esq.
Attorney for Defendant

Date: 1/10/05

8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. |
| | ) | 04-10136-RCL |
| v. | ) | |
| | ) | |
| ESSOKOUSSAM AGBA | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

1. On March 4, 2004, the defendant, Essokoussam Agba ("Agba"), arrived at Boston Logan International Airport, Boston, MA, from France on Air France Flight No. 322. On his customs form, Agba identified himself as a citizen of Togo, and a resident of Burkina-Faso. He indicated on the form that he had traveled to the United Kingdom prior to his trip from France to Boston.

2. During routine questioning with inspectors from Immigration and Customs Enforcement, Agba told inspectors that he was in the United States to visit his son, who was getting married, and that he intended to stay for three weeks. Agba told inspectors he would be staying at 276 Collins Street, Apt. 102, Hartford, CT. He stated that he intended to get to Hartford with a bus, but did not have a reservation, bus ticket, or any idea where the bus station was located. He stated that he did not know how he would get to his brother's house once he arrived in Hartford.

3. Agba was in possession of two hand carried pieces of

luggage, and two checked pieces. He admitted that he owned all of the pieces and their contents. He admitted that he packed the bags himself. At the time, Agba possessed numerous Visa credit cards, a Fleet bank ATM card, and membership cards from Staples, Western Union, Sam's Club, Air France, and BJ's Wholesale Club.

    4. Inspectors emptied the contents of Agba's hand-carried briefcase. Afterwards, the briefcase appeared to be unusually heavy and thick. Upon further inspection, inspectors discovered two taped wrapped packages concealed in the lining of the briefcase. The wrapped packages contained a white, powdery substance that field tested positive for heroin.

    5. Upon the finding of the two packages, inspectors searched Agba's remaining luggage. One of checked-in bags contained a smaller purse. The lining of the purse was cut open, and inspectors found another taped package. This package also contained a white, powdery substance that field tested positive for heroin.

    6. The three packages were subsequently sent to the DEA laboratory and were tested by a qualified chemist. The two packages in the briefcase contained approximately 1,221 grams of heroin. The package contained in the purse contained approximately 497.4 grams of heroin.

    7. At the time he boarded the plane in France, and when he entered Boston, MA, Agba was aware that the luggage he carried

into the United States contained heroin.